*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. NEWNUM, Minor.

UNPUBLISHED
January 27, 2022

No. 357710
Allegan Circuit Court
Family Division
LC No. 19-061471-NA

Before: CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating her parental rights to her minor child, AN, under MCL 712A.19b(3)(c)(*ii*) (other conditions exist that could have caused the child to come within the court's jurisdiction), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to the parent's care). We affirm.

## I. BACKGROUND

In June 2019 a petition was filed with respect to AN. The petition alleged that AN had tested positive for methamphetamines, amphetamines, and marijuana when she was born in May 2019. The petition further alleged that respondent had untreated mental health issues and that respondent had "multiple physical outbursts, including injuring herself [by] punching walls." It was requested that the trial court place AN in foster care and exercise jurisdiction. After holding a preliminary hearing, the trial court authorized the petition and placed AN in foster care.

In August 2019, respondent admitted that she had mental health issues that negatively impacted her ability to parent AN and that she required services to address her mental health issues. AN's father made similar admissions. The trial court exercised jurisdiction and ordered that reasonable efforts toward reunification be made. The initial dispositional hearing was held in September 2019, and the caseworker indicated that respondent and AN's father had engaged in domestic violence. Respondent was ordered to submit to psychological and substance abuse assessments and to comply with and benefit from (1) parenting classes, (2) mental health therapy, (3) domestic violence counseling, and (4) services to address substance abuse, including submitting to random drug screenings. Respondent was also ordered to obtain and maintain stable housing and employment and to attend parenting time with AN.

-1-

Respondent submitted to the psychological and substance abuse assessments and began taking medication to address her mental health issues. However, respondent tested positive for methamphetamines in the early stages of the proceeding and continued to engage in a relationship with AN's father even though he had physically assaulted her in September 2019. Respondent and AN's father lived together in a camper, which was deemed inappropriate for AN. In March 2020, respondent was charged with domestic violence in relation to an altercation that she had with AN's father while she was under the influence of alcohol. Respondent moved into a mobile home with her cousin, her cousin's husband, and her cousin's three children. Respondent thereafter demonstrated some improvement with respect to maintaining her sobriety and participating in services. Respondent also obtained part-time employment. However, in July 2020 respondent began a relationship with a man who had a history of substance abuse and domestic violence, which resulted in his parental rights to his daughter being terminated. Respondent was not initially forthcoming about the relationship.

In September 2020, petitioner filed a supplemental petition, requesting that the trial court terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*), (g), and (j).[1] At the termination hearing, caseworkers testified about respondent's lack of sufficient progress during the proceeding. Respondent testified on her own behalf and indicated that she had made progress during the proceeding and was able to effectively parent AN. Respondent also indicated that the domestic violence charge in relation to her alleged assault on AN's father had been dismissed. After the close of proofs, the trial court found that reasonable reunification efforts had been made but that respondent had failed to demonstrate that she was able to effectively parent AN. The trial court also concluded that statutory grounds existed to support the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*ii*), (g), and (j)[2] and that termination of respondent's parental rights was in AN's best interests. This appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We find no clear error warranting reversal.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id.* "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," with the reviewing court

---

[1] AN's father moved to Arkansas during the proceeding and voluntarily relinquished his parental rights to AN.

[2] The trial court determined that termination was not proper under MCL 712A.19b(3)(c)(*i*) because respondent had adequately addressed her mental health issues during the proceeding.

"defer[ring] to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

We conclude that the trial court did not clearly err by finding that grounds for terminating respondent's parental rights to AN were established under MCL 712A.19b(3)(g). MCL 712A.19b(3)(g) authorizes termination under the following circumstances:

> The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child[ren] and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child[ren]'s age[s].

In this case, AN tested positive for illegal substances at birth. Despite being offered substance abuse services, respondent tested positive for illegal substances at times during the proceeding and did not fully engage in the services. Respondent also engaged in domestic violence with AN's father at least three times during the proceeding and was charged with domestic violence. Respondent ultimately ended her relationship with AN's father and her domestic violence charge was dismissed. However, respondent later began a relationship with a man who had a history of domestic violence, who had substance abuse issues, who had several criminal convictions, and whose parental rights had been terminated. Respondent continued the relationship despite being informed that it would hinder her ability to reunite with AN. Additionally, in January 2021, respondent tested positive for oxycodone.

Respondent also demonstrated an unwillingness or inability to effectively care for AN, who has special needs. Although respondent was provided with services to address her parenting skills, respondent continuously needed to be given instructions on how to appropriately feed AN, who has issues with swallowing. In the weeks leading up to termination, it was reported that AN was not eating enough during visitations and that she was "often . . . pretty hungry" when she returned to daycare. Respondent only attended three out of "ten or eleven" of AN's occupational therapy appointments, failed to attend most of AN's medical appointments, and failed to contact AN's infant mental health therapist despite being provided with her contact information. AN's hair began to thin during the proceeding, which was believed to be a result of stress. Despite AN's issues, respondent failed to follow up with service providers to ask for additional assistance. Given this evidence, it is unlikely that respondent would appropriately parent AN, who would require services in the future to address her many needs. Thus, the record establishes that respondent was unable to provide proper care and custody at the time of termination despite being "financially able to do so[.]"

Furthermore, there is no evidence that respondent would have been able to provide proper care and custody within a reasonable time given AN's age. Respondent demonstrated a lack of sufficient progress during the proceeding, which lasted close to two years. Caseworkers opined that respondent would need to participate in services and demonstrate stability for an additional six months before AN could be returned to her care. At the time of termination, AN was two years old, had spent nearly her entire life in care, and required consistency and permanency. The trial court's finding that termination of respondent's parental rights was proper under MCL

712A.19b(3)(g) does not leave us with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).[3]

## B. BEST INTERESTS

Respondent next argues that the trial court erred by finding that termination of her parental rights was in AN's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We review the trial court's best-interest determination for clear error. *Id.*

This Court focuses on *the child*—not the parent—when reviewing best interests. *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citation omitted).]

While the record supports that respondent and AN were bonded, the record also supports that the bond was not healthy for AN. Indeed, in the six months before termination, AN began to bite and pinch other children and her "caregivers," and AN engaged in attention-seeking behaviors after parenting time visitations. AN's hair also began to thin, and AN was "clingy," "more agitated, [and] more easily upset" after visitations. Respondent was never permitted to have unsupervised parenting time with AN, who had been out of her care for nearly two years at the time of termination. This was based in part on respondent being criminally charged with domestic violence against AN's father and entering into a relationship with a man who was on the Central Registry. Thus, although respondent shared a bond with AN at the time of termination, the record supports that the bond was not healthy for AN. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394 (2014) (holding that the fact that there was a "serious dispute" on the record concerning whether the respondent

---

[3] Because we have concluded that at least one ground for termination existed, we need not specifically consider the additional grounds upon which the trial court based its decision. *In re HRC*, 286 Mich App at 461. However, we have considered them and conclude that termination was also proper under MCL 712A.19b(3)(c)(*ii*) and (j).

had "a healthy bond" with her children supported that termination of her parental rights was in the children's best interests).

Additionally, the parent-child bond is only one factor for the trial court to consider. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). As discussed above, respondent failed to make sufficient progress during the lengthy proceeding, was charged with domestic violence, and prioritized her relationship with her boyfriend over reunifying with AN. Respondent was also unable to effectively care for AN, who has special needs and required a myriad of services. AN's needs were attributed at least in part to respondent ingesting illegal substances while she was pregnant with AN and to the stress that AN experienced as a result of being in care for nearly two years. Despite receiving services, respondent struggled with AN's feeding needs and failed to attend a myriad of AN's medical appointments. Respondent also failed to contact AN's infant mental health therapist despite being provided with her contact information.

Meanwhile, AN was doing well in her placement and was bonded with her foster mother and the other children who lived in the home. The foster mother demonstrated an ability and willingness to provide for AN's needs and expressed a desire to adopt AN, who had been placed with her for the entirety of the proceeding. Notably, the foster mother indicated that AN was "adore[d]" and that she could not "imagine" AN being placed "somewhere else" if respondent's rights were terminated. For these reasons, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in AN's best interests. In so holding, we acknowledge that "it would be impermissible for [respondent's] parental rights to be terminated solely because . . . she was a victim of domestic violence." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). However, in this case, it is clear that respondent's own behaviors were harmful to AN. See *id*.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro